They cited *Kirkpatrick's Lessee vs. Kyger*, 1 *Harr. & Johns.* 289. *Webb's Lessee vs. Beard, Ibid* 349. *Hughes's Lessee vs. Howard*, decided in *Baltimore* county court, and now on appeal in this court.

1807.

Hammond
vs
Warfield

Curia adv. vult.

The Court, at this term, decided that there was no error in the opinions given by the general court in either of the bills of exceptions taken on the part of the plaintiff below.

Nicholson, J. concurred, except as to the opinion given in the *eighth* bill of exceptions, and from that opinion he dissented,

JUDGMENT AFFIRMED.

———

Hammond, *et al.* Lessee, *vs* Warfield.

December.

Appeal from the General Court. Ejectment for a tract of land called *Part of Wood's Inclosure*, lying in *Frederick* county, containing 2286 acres. The defendant, (now appellee,) took defence on warrant, under the general issue plea, for a tract of land called *The Resurvey on Hobson's Choice.*

The courts will take notice of the rules of the land office as forming regulations relative to property, and will direct the jury as to the law arising from such rules.

The rules of the land office cannot be proved by witnesses; they are to be found on the records of that office, and in the proclamations of the proprietary

The usage and practice of the land office must be proved by the adjudications of the judges of that office, and not by the opinions of witnesses as to what was that usage and practice.

Where a warrant of resurvey, taken out by J H, who was not seized of the original tract resurveyed, was located on vacant land not contiguous to such original tract, his grant therefor will operate by relation to the date of the certificate of resurvey, if the composition money was paid in time, and the certificate of resurvey was returned to and in the land office, when a warrant of resurvey issued to J C to affect the vacant land included in J H's certificate; or if the composition money was not paid in time by J C on his resurvey, and J H's certificate was in the office when J C did compound, the grant to J H will relate to the date of the certificate.

But if J H's certificate was not in the office when the warrant issued to J C, and J C compounded on his resurvey in time; or if J H's certificate was not in the office when J C did compound, though not in time, and obtained his grant, then J C was a fair purchaser for a valuable consideration without notice of the equitable interest of J H, and the grant to J C cannot be overreached by relation.

If vacant land, not contiguous to the original tract resurveyed, is included in the certificate of resurvey. it is not legal notice of the location of the warrant, until the certificate is returned to the land office

If an assigned land warrant was applied in time to the payment of composition money on vacant land included in a certificate of resurvey, such application will be equivalent to the payment of so much money

The jury are to find when the composition money was paid on a certificate of survey.

A naked possession, (possession without right,) is adversary only to the extent of actual enclosures.

Where the plaintiff's grant operated by relation to the date of the certificate, and overreached the defendant's elder grant for the same land, the entry of the grantee, under such elder grant, and the possession by him, and those claiming under him, was without right, and cannot bar the plaintiff's recovery, unless such possession was by actual enclosures for 20 years prior to the bringing the ejectment

To entitle a party to the benefit of the relation of his grant to the certificate, it is incumbent on him to shew an equity; and the producing copies under seal of the warrant, certificate and grant, is not sufficient to entitle him to such benefit.

The time when a certificate was returned to the land office, is a matter of fact determinable by the jury.

A petition to the judges of the land office by T D, with certain alterations made therein in the hand-writing of a clerk in that office, (now dead,) stating when a certificate was returned, not permitted to be given in evidence, as a circumstance to prove at what time the certificate was returned, or to prove it was returned before a certain period, as the party against whom the testimony is intended to operate does not derive any interest in the land in question under T D,

1807.

Hammond
vs
Warfield

1. At the trial at May term 1803, the defendant pro-duced the honourable *Alexander Contee Hanson,* chancellor, and judge of the land office for the western shore, and proposed to him the following question, to wit: "If a cer-tificate on a warrant of resurvey is returned, in which va-cant land is included, not contiguous to the original, but separated by elder surveys; and the person returning the said certificate has paid the caution for the land not conti-guous to the original, and no patent has issued, and a man by a warrant taken out after the payment of the said cau-tion money, returns a certificate including the vacancy com-prehended in the certificate of the survey which is not con-tiguous to the original, and pays the caution money; if the above facts appear to the judges of the land office, would not, by the laws of the land office, the former certificate be vacated as to the vacancy not contiguous, and patent issue to the younger certificate?" But the counsel for the plaintiff objected to the question put to the witness.

CHASE, Ch. J. The courts of justice will take notice of the rules of the land office as forming regulations relative to property, and will direct the jury as to the law arising from such rules. The rules of the land office cannot be proved by witnesses; they are to be found on the records of the land office, and in the proclamations of the proprie-tary. Opinions as to the rules of the land office cannot be received as evidence. The usage and practice of the land office must be proved by the adjudications of the judges of the land office, and not by the opinions of wit-nesses as to what that usage and practice may be. The adjudications contain the legal information as to what have been the usage and practice in the land office. The court therefore refuse to allow the witness to be examined. The defendant excepted.

When a grant shall by relation operate from the date of the certi-ficate of resurvey, and when it shall not, where the vacant land in-cluded, was not contiguous to, and the person obtain-ing the warrant was not seized of, the original tract resurveyed

An assigned land warrant may be applied to the payment of the composition money on vacant land surveyed

2. The plaintiff offered in evidence the same title which was offered in evidence in the case of the same plaintiff against *John Norris,* tried at the present term, and which title is particularly set out in the *fourth bill of exceptions* taken in that cause. *(Ante* 132.) The plaintiff then proved, that the land referred to, called *Wood's Lot,* ac-quired by reputation the name of *Wood's Inclosure,* and that they are one and the same tract of land. The defen-

1807.

Hammond
vs
Warfield

dant then read in evidence a patent granted to *John Carmack, Stephen Richards,* and *Daniel Richards,* for a tract of land called *Hobson's Choice,* dated the 23d of January 1753, for 25 acres. Also a warrant of resurvey granted to the said patentees on the 18th of April 1753. Also a certificate made in virtue of that warrant, dated the 4th of September 1753, and the land called *The Resurvey on Hobson's Choice,* containing 395 acres, which was examined and passed the 1st of July 1755. Also the patent which issued in virtue of that certificate, to *Basil Dorsey,* dated the 19th of May 1755, stating that the certificate had been, on the 19th of May 1755, assigned to him by *Carmack* and *Richards.* Also an order of the land office for granting a certain warrant, and the warrant which issued in virtue thereof, dated the 15th of October 1754, to *Henrietta Maria Dulany,* for 3000 acres. Also a renewment of that warrant on the 7th of April 1755, to *H. M. Dulany,* for 1127 acres. Also the marginal entries on the warrant, showing how the same had been employed, viz. "370 acres assigned *Basil Dorsey,* and applied to *The Resurvey on Hobson's Choice.*" Also an assignment from *H. M. Dulany* to *B. Dorsey,* for 370 acres, a part of the said warrant. He also offered evidence to prove that the certificate of *Part of Wood's Inclosure,* was not returned to the land office at any time on or before the 19th of May 1755. The defendant then prayed the opinion of the court, and their direction to the jury, that the patent of *Part of Wood's Inclosure,* cannot relate to the date of the certificate thereof, or to the time of paying the caution money on the certificate, so as to overreach the title of the defendant under the patent of *The Resurvey on Hobson's Choice,* but that the title under the last mentioned patent, is an elder title than that under the certificate of *Part of Wood's Inclosure.* He also prayed the opinion of the court, &c. that if from the evidence the jury do not find that the certificate of *John Howard* was returned to and in the land office when *Basil Dorsey* compounded on the certificate for *The Resurvey on Hobson's Choice,* and obtained his patent for the same, that in that event *B. Dorsey,* though the payment of the composition money made by him was not within two years after the date of the warrant in virtue of which *The Resurvey on Hobson's Choice* was resurveyed, was a fair purchaser for a valuable consideration, without

notice of the equitable interest of *J. Howard*, and the pa-
tent to *B. Dorsey* cannot be overreached or defeated by
relation. And he further prayed the opinion and direction
of the court, &c. that if the jury should be of opinion,
from the evidence before them, that the assignment by *H.
M. Dulany* to *B. Dorsey*, was made before the 18th of
April 1755, then the payment of the caution money made by
him on his certificate of *The Resurvey on Hobson's Choice*,
will take effect and have operation in the same manner as if
the payment had been made before the 18th of April 1755.

CHASE, Ch. J. The court are of opinion, that if it ap-
pears to the jury that the warrant of resurvey, taken out
by *John Howard*, was located on the 5th of March 1753,
and the certificate was returned on or before the 18th of
April 1753; when the warrant of resurvey on *Hobson's
Choice* was taken out by *John Carmack, Stephen* and *Da-
niel Richards*; and that the composition money was paid by
*Philip Hammond*, the assignee of *Howard*, within two
years from the date of his warrant, then the patent to
*Philip Hammond*, and others, will operate from the date
of the certificate. But if the certificate on the warrant
taken out by *J. Howard* was not returned to, and in the
land office on the 18th of April 1753, and the jury find
that *Carmack* and *Richards*, or *B. Dorsey*, did compound
on the certificate on the warrant on *Hobson's Choice*, with-
in two years from the date of that warrant, then the patent
to *Hammond* and others cannot operate by relation to the
date of the certificate, and overreach the patent to *B. Dor-
sey.*

But if the jury do not find the composition money was
paid within two years from the date of the warrant, by
*Carmack* and *Richards*, or *B. Dorsey*, and do find that
the certificate of *J. Howard* was returned to, and in the
land office when *B. Dorsey* compounded on the certificate
for *The Resurvey on Hobson's Choice*, then the patent to
*Hammond* and others will operate by relation to the cer-
tificate; but if the jury do not find that the certificate of
*J. Howard* was returned to, and in the land office when
*B. Dorsey* compounded on the certificate for *The Resur-
vey on Hobson's Choice*, and obtained his patent for the
same, in that event *B. Dorsey*, though the payment of the
composition money made by him was not within two years

1807.

Hammond
vs
Warfield

after the date of the warrant, in virtue of which *The Re-survey on Hobson's Choice* was resurveyed, was a fair pur-chaser for a valuable consideration without notice of the equitable interest of *J. Howard,* and the patent to *B. Dor-sey* cannot be overreached or defeated by relation—The court being of opinion, that as the land, (on which the warrant of resurvey of *J. Howard* was located,) was not contiguous to the original tract resurveyed, there could be no legal notice of the location of the warrant but on return of the certificate to the land office.

The court are also of opinion, that if warrant was ap-plied by *Carmack* and *Richards,* or *B. Dorsey,* in pay-ment of the caution money, within two years from the date of the warrant granted to *Carmack* and *Richards,* that such application of warrant will be equivalent to the payment of so much money. But the court are also of opinion, that, although the assignment by *H. M. Dulany* to *B. Dorsey* was made before the 18th of April 1755, the payment of the caution money made by him will not take effect as a payment unless the warrant was so applied by him within two years from the date of the warrant. The defendant excepted.

8. The plaintiff then offered to prove that the usage and custom of returning certificates to the land office was, that the surveyors who made the certificates respectively re-turned them to the land office, and from the land office the certificates were sent by the clerk or register to the examiner-general for examination, by whom again they were generally returned to the land office. He then pray-ed the opinion of the court, and their direction to the jury, that if they do find the composition money was not paid within two years from the 18th of April 1753 by *Carmack* and *Richards,* or *B. Dorsey,* that then the patent to *P. Hammond* and others will operate by relation to the certifi-cate, although the jury shall find that the certificate was not returned to the land office before the 18th of April 1753; provided the composition money was paid on the certificate of *Part of Wood's Inclosure* before the composition money was paid on the survey made in pursuance of the warrant of resurvey which issued on the 18th of April 1753. He also prayed the direction of the court to the jury, that the

Where the com-position money was not paid in time under a regular warrant and cer-tificate, but was paid when a certi-ficate of an irregu-lar resurvey under an irregular war-rant was in the of-fice, the grant on the latter resurvey will operate by re-lation to the certi-ficate But if the latter certificate was not in the of-fice when the com-position money on the former was paid, tho' not in time, then the grant on the for-mer cannot be overreached or de-feated by relation

1807.

Hammond
vs
Warfield

application of common warrant to compound on the resurvey made under the warrant of the 18th of April 1753, can have no other effect than if the caution money had been paid in money; and that although they find that the common warrant, which was applied as composition money, issued on the 5th of April 1755, yet it can only be considered a payment for the land included in the survey made under the warrant of the 18th of April 1753, from the time it was applied as a payment, and cannot go back, either to the 5th of April 1755, or to the time it was assigned to *B. Dorsey* who made the payment with it.

CHASE, Ch. J. delivered the same opinion of the court, as that given on the defendant's prayer in the preceding bill of exceptions, excluding the first section of that opinion. The plaintiff excepted; and the defendant also excepted to so much of the opinion of the court as determines, that under the circumstances as stated, which in the opinion of the court, will entitle the patent for *Part of Wood's Inclosure* to a relation to the certificate so as to overreach the patent for *The Resurvey on Hobson's Choice*, under which the defendant makes title.

*If the plaintiff's grant operated by relation from the date of the certificate, and overreached an elder grant for the same land to the defendant, the entry of the grantee under the elder, and the possession by him and those claiming under him, was without right, and cannot bar the plaintiff, unless such possession was by actual enclosures for 20 years prior to the bringing the ejectment.*

*A naked possession, (possession without right,) is adversary only to the extent of actual enclosures.*

4. The defendant then offered evidence that *B. Dorsey*, the patentee, in virtue of his resurvey, entered into, and was possessed of *The Resurvey on Hobson's Choice* in the year 1755, and continued so possessed until his death, which happened in the year 1763; that by his will he devised the land to his son *Dennis* in tail, remainder to his daughters. That in the month of April 1774, *Dennis Dorsey*, the devisee, then a minor of the age of 18 years, entered upon *The Resurvey on Hobson's Choice*, and had the same surveyed and run out; that he continued so to possess that land until his death, which happened in the year 1778. That *D. Dorsey* died intestate and without issue, leaving three sisters, to wit, *Ariana*, married to *Thomas Sollers*, *Eleanor* married to *Upton Sheredine*, and *Elizabeth* married to *Ephraim Howard*. That after the death of *D. Dorsey*, the said *Sollers*, *Sheredine* and *Howard*, in right of their wives, entered into the land, and were possessed thereof until the 22d of February 1779, when they, together with their wives, conveyed the land to the present defendant, who in virtue of that deed entered into the land

on the same day, and was possessed thereof, and has conti-
nued so possessed until this time.  He then offered in evi-
dence, from the rent rolls in the land office, that the said
land, upon being patented to B. Dorsey, was also charged
to him in the rent rolls; and also the debt books of the
late Lord Proprietary, whereby it appears that the quit
rents due upon the said land were in the debt books charg-
ed to B. Dorsey, and were by him paid from the year 1756,
until his death in 1763; and that after his death, the quit
rents were in the debt books charged to, and paid by, B.
Dorsey the devisee, from the year 1763, until the revoluti-
en abolished the proprietary quit rents.  The defendant
then prayed the opinion of the court, and their direction
to the jury, that if they should be of opinion, from the
whole evidence before them, that B. Dorsey came into the
actual possession of The Resurvey on Hobson's Choice,
claiming the whole thereof under and by virtue of the pa-
tent thereof granted to him, before the 3d of May 1760,
when P. Hammond, the father of Charles, and grand-fa-
ther of Philip, one of the lessors of the plaintiff, died, and
that B. Dorsey was on that day in the actual possession of
that tract, claiming the whole, and that he, and those
claiming under him, other than the lessors of the plaintiff,
and those under whom they claim, have been in the actual
possession thereof, claiming the whole, from the day last
aforesaid until the time of bringing this action, then the
plaintiff cannot recover, unless it should be satisfactorily
proved to the jury, on his part, that Charles Hammond,
son of Philip, or some person claiming under him, made
an actual entry into Part of Wood's Inclosure, claiming
the whole thereof, at some time within twenty years next
after the 3d of May 1760.

Harper, for the Defendant, cited Russell's Lessee vs. Ba-
ker, 1 Harr. & Johns. 71.   Davidson's Lessee vs. Beatty,
3 Harr. & M'Hen. 594.   Miller's Lessee vs. Hynson, (in
the Provincial Court, May term 1734.)   Hawkins's Lessee
vs. Bolton, (Ibid, April term 1745.)   M'Crackin et ux
Lessee vs. Harris, (Ibid, May term 1748.)   2 Blk. Com.
311, 312.   Co. Litt. 15, a, Sect. 8.   Taylor vs. Horde, et al.
1 Burr. 119.   Bac. Ab. tit. Trespass, (C. 3.)   Bro. Ab.
tit. Surrender, 245. b.   1 Leon. 209.   2 Leon. 147,
4 Leon. 184,   2 Roll. Ab. tit. Trespass, 553, 554.

1807.

Hammond
vs
Warfield

CHASE, Ch. J. A naked possession, (possession without right,) is only adversary to the extent of actual enclosures. If the patent to *P. Hammond* and others relates to the certificate, the *Dorseys* and the defendant had only a naked possession, and limitation by adversary possession is only to the extent of enclosures.

The court are of opinion, that if the patent to *P. Hammond* and others doth operate by relation from the date of the certificate, that in such event the patent to *B. Dorsey* for *The Resurvey on Hobson's Choice,* which is stated to be included in the patent to *P. Hammond,* and others, doth not pass any thing, but is altogether inoperative, and the entry of *B. Dorsey,* and the possession by him, and those claiming under him, was without right, and that such possession cannot bar the plaintiff, if the jury do find the facts stated by the plaintiff, unless they also find that such possession was by actual inclosures for twenty years or upwards, prior to the bringing this ejectment; and in such case, it would only be a bar to the extent of such actual adversary possession by enclosure. The defendant excepted.

*The relation of a grant to the certificate of survey, so as to overreach mesne grants, is founded on a principle of equity, and is a fiction of law introduced for the attainment of justice, and to prevent circuity of action.*

*To entitle a party to the benefit of relation, it is incumbent on him to show an equity.*

5. The plaintiff then prayed the opinion of the court, and their direction to the jury, that if they find and believe the facts to be true as stated by him, that then, upon principles of law, when the patent, under which he claims, was obtained from the land office for the land included in the certificate of resurvey, the patent related to the date of the certificate, and operates to give title from that time, unless facts are proved to rebut and defeat such relation; and that the defendant, on his part, must prove all facts necessary to defeat such relation, it being only incumbent on the plaintiff to produce office copies, under seal, of the warrant, certificate and patent, to claim on his part the benefit of relation.

CHASE, Ch. J. The court are of opinion, that the relation of the patent to the certificate, so as to overreach mesne grants, is founded on a principle of equity, and is a fiction of law introduced for the attainment of justice, and to prevent circuity of action—the court doing that which a court of equity would effect.

The court refuse to give the direction prayed, being of opinion that it is incumbent on the plaintiff to show an equity to entitle him to the benefit of relation, and the producing copies, under seal, of the warrant, certificate and patent, is not sufficient to entitle him to such benefit. The plaintiff excepted.

6. The plaintiff having given in evidence the certificate and patent for *Part of Wood's Inclosure*, and that the certificate was examined and passed on the 6th of March 1754, and the caution money paid on the 6th of March 1754; and having proved, that before the year 1766, it was not the practice of the land office that the time of the return of the certificates should be endorsed on the certificates respectively; and also having given in evidence, under the proprietary government, it was the usual practice for the surveyor to return to the office the certificate for the office, and for the clerk of the land office to send the certificates to the examiner-general to be examined, and for him to return the same, after examination, to the clerk of the land office; applied to the court to instruct the jury, that these facts, so offered in evidence, are sufficient to prove that the said certificate was duly returned to the land office on or before the 5th of March 1754, unless the defendant can prove the contrary.

*The time when a certificate of survey was returned to the land office, is a matter of fact determinable by the jury*

CHASE, Ch. J. The court refuse to give the direction prayed, being of opinion, that the time when the certificate was returned, is a matter of fact determinable by the jury, upon the whole evidence relative to that fact given by the plaintiff and the defendant. The plaintiff excepted.

7. The plaintiff then offered in evidence, that the office of the examiner-general, and the office of the agent, to whom the caution money was paid, were held in the city of *Annapolis*, and that the party, after his certificate was examined and passed, and returned to the office, was accustomed to carry his certificate to the office of the agent, and pay the caution money thereon, and to bring the same back to the office; and that after the certificate was compounded on, the party could not take his certificate out of the office, without applying to the judge of the land office, and obtaining his permission for that purpose, and that before the certificate was taken out on such permission, the party

*As to the practice relative to the returning of certificates of surveys to the land office, their examination by the examiner-general, endorsements thereon, and entries thereof, and of caveats thereto, &c. the granting patents, and entries thereof, on the rent rolls*

*The actings and doings of a person under whom the party does not claim, are not permitted to be given in evidence against him*

was required to give a receipt for the same, which receipt was kept in a memorandum book for that and other purposes. It was offered in evidence, that the said memorandum book, as well as other memorandum books, which had been kept for particular purposes in the land office under the proprietary government, have been lost or destroyed. That in such instances, under the proprietary government, in which the parties themselves carried the certificates to the land office, they were carried there before they were examined and passed, and were sent to the examiner-general by the clerk of the land office to be examined, in the same manner as if returned into the office by the surveyor. And it was also given in evidence by *John Callahan,* Esquire, Register of the Land Office, who had been examined as to the foregoing facts, that before the year 1760, it was not the practice or usage in the land office to endorse on the certificate the time when the certificate was received into the office; that when a warrant of any kind was issued for the surveying or taking up of land, it was immediately entered up and recorded in a record book kept in the land office for that purpose; that when a person applied to the office to caveat any certificate, if the same was not in the office, or could not conveniently be found, it was usual to enter the caveat in the margin of the warrant; that under the proprietary government, a caveat docket was regularly kept, in which was also entered every caveat as soon as made; but that those dockets are now lost. That where a certificate was caveated, the judge of the land office did not act upon the caveat and dismiss the same, under the proprietary government, unless the certificate was in the office; that the witness knew of no instance to the contrary; and that it was the usual practice to endorse the dismissal of the caveat on the certificate. That if a caveat was entered, it was not the usage of the office to have patents made out, sent to the governor to be sealed, returned to the office and recorded, until a hearing and dismissal of the caveat; and that although the caveat had remained more than six months unacted upon and unrenewed, yet it was not the practice and usage of the land office, under the proprietary government, to have the caveat dismissed, and patent issued and recorded, unless on particular application of the party entitled to the patent. The plaintiff further offered

1807.

Hammond
vs
Warfield

in evidence, that the said *Callahan* was, when examined, in the forty-ninth year of his age; that he first went to write in the land office in the latter end of the year 1767, and continued in that office nearly the whole time, until the formation and adoption of our present government; that when he went to write in the land office, *William Steuart* was the clerk of the land office, and continued such until some time in the year 1774, when *David Steuart* succeeded him in the said appointment, and continued to hold that office until the appointment of *Saint George Peale*, as register of the land office, in April 1777; and that at the time the said *Callahan* first went to write in the land office, *Saint George Peale* was the eldest clerk or writer in that office, employed by *William Steuart*, (who was not very often himself in the office,) and remained so until he was appointed register. That during the *American* revolution, to wit, sometime in the month of January 1776, the books, records and papers, belonging to the land office, were packed up and removed to *Upper Marlborough*, where they were kept until sometime in July 1778, when they were brought back again to the city of *Annapolis*, and that by such removal some loss and injury had happened to some of the books and papers. The plaintiff further offered in evidence the assignment of the certificate for *Part of Wood's Inclosure*, and that it was made and executed on a separate piece of paper, and that the assignment is annexed, by wafers, to one side of a sheet of the original certificate in the land office, and that the side of the sheet, to which it is so annexed, is blank, and not written upon. The assignment is of "the certificate returned on a certain resurvey had and made upon 86 acres of land, being part of a tract of land called *Wood's Inclosure*, originally taken up by *Joseph Wood*." He further offered in evidence, that the certificate of *Part of Wood's Inclosure*, now remaining in the land office, comprizes and is written upon two sheets of paper; and that the said *Callahan* had no knowledge that the certificate was ever out of the office from the time the caution money was paid thereon. The said *Callahan* further in his testimony declared, that he had no knowledge what was the usage and practice in the land office in the year 1753, and for many years after; that when he spoke of the usages and practices of the land office, he meant the usages and practices while

he was a writer therein, which he supposes conformable to the usages and practices which had been in former periods adopted. That it was the general practice of the land office, and that he did not recollect an instance to the contrary, that caveats were not heard and decided upon, unless the certificate caveated was in the office at the time of decision; and that it was the practice to note on the certificates caveated, the decisions made thereon, allowing or disallowing the caveats. The plaintiff also offered in evidence three original certificates from the land office, with the warrants under which the surveys were made, and the endorsements in the margin of the warrants of caveats having been entered against patents issuing on those certificates; and that neither the caveats, the orders, nor decisions made thereon, appear on the certificates. He also offered in evidence a large bundle of original certificates, returned to the land office, from *Frederick* county, for the year 1753, amounting to the number of 120, and the same were brought into court, and offered in evidence in the order in which they were found in the land office, and that in the number aforesaid there were only three certificates on which caveats were noted. The defendant then offered to prove, that there is no endorsement upon the certificate now in the land office for *Part of Wood's Inclosure*, of the time when it was returned to the land office; and also proved by *John Callahan*, esquire, register of the land office, that when a certificate of survey or resurvey was returned to the said office, and remained therein, and was caveated by any person who opposed a grant issuing thereon, it was customary to endorse the entering of the caveat upon the back of the certificate so caveated; but that if the certificate was not in the land office when the caveat was so entered, that then it was customary to make an entry of the caveat in the margin of the warrant book, opposite to the warrant upon which the certificate was founded. He then produced from the land office, and showed to the jury, the warrant upon which this certificate was founded; and the book in which the same is entered; and also showed, that in the margin thereof, opposite to the warrant, it is entered that *Greenbury Ridgely* did, on the 12th day of July 1754, enter a caveat against a grant issuing on the certificate for *Part of Wood's Inclosure*. He then pro-

duced the original certificate for *Part of Wood's Inclosure*, and from the same showed to the jury that there is no entry upon that certificate, made by any clerk or officer in the land office, by which it can be inferred that the same was in the land office, until the 30th of January 1772, when there is an entry thereon that the same was caveated by *Philip, Rezin*, and *Matthias hammond*, sons of *P. Hammond*, (to whom the same certificate had been assigned by *J. Howard*,) and that the certificate has no plot or table of courses annexed thereto, or filed therewith. He then offered in evidence, that although it was customary for the surveyor, who made out a certificate before the revolution, to return the same to the land office, from whence it was transmitted to the examiner-general, yet there was no regulation which prevented the party himself from bringing his own certificate, and carrying it himself to the examiner, previous to its coming into the land office; and that before the revolution, as well as since, it was the business of the owner of a certificate, which had been examined and passed, to carry the same to the person authorised to receive the composition money, that he might ascertain the sum to be paid thereon, and to pay the composition money to the person so authorised to receive the same. That on the 14th of June 1733, there was a proprietary order respecting the continuance of caveats, in the words following: "That no caveat be permitted to be renewed after the expiration of six months." That on the 19th of December 1768, there was a second proprietary order on the same subject, in the words following: "That no caveat be permitted to continue longer than six months, nor be renewed after that time, unless upon very special circumstances." He also offered evidence, that no charge, before the revolution, was entered upon the proprietary rent rolls for lands against any person, until the lands were patented, and no account raised against any person as the holder of lands, for quit rents as due to the proprietary, except for lands which were patented. That whenever a certificate was returned to the land office, and had been examined and passed, and compounded on, it was the interest of the proprietary that it should be patented; and if such certificate remained in the land office, and there was no legal objection to patent issuing thereon, it was customary to issue a patent thereon, and charge the grantee with the quit rents

due thereon to the proprietary. It is admitted that the whole of the evidence offered by both plaintiff and defendant, as stated herein preparatory to the taking this bill of exceptions, so far as the same is not derived from papers of the land office, herein stated and referred to, is derived from *John Callahan*, Esquire, register of the land office. That one of the three certificates, herein before referred to by the plaintiff, as the case of a certificate caveated whereon the caveat was entered in the margin of the warrant and not upon the certificate, was as followeth: The original certificate bore date on the 22d of July 1754, upon which there was a caveat entered on the 26th of February 1756, by one *J. Bayne*; that this caveat was entered on the margin of the warrant, and also on the certificate returned to, filed, and now remaining in the land office; that the said certificate was afterwards amended, and the amended certificate, bearing date on the 26th of May 1769, returned to the land office, upon which amended certificate a patent issued on the 15th of November 1769, and in the margin of the warrant, upon which the same issued, there was an entry in these words "caveat overruled. Patent issued 15 October 1769," of which proceeding there was no entry, either upon the original certificate, or upon the amended certificate. The plaintiff then offered to give in evidence a petition preferred by *Thomas Dorsey*, on the 29th of October 1772, to the judges of the land office, caveating the certificate for *Part of Wood's Inclosure*, which was originally drawn in the hand-writing of *Samuel Chase*, esquire, and which remains in the land office. The petition, as originally drawn, after stating the issuing the warrant, the resurvey, &c. was as follows: "That the said certificate was *never* returned to the land office, *but kept by the said Philip Hammond in his possession, till his death in the year 1761.* That the said certificate was *kept* by a certain *John Hammond*, esquire, son of the said *Philip*, or by the said, *a certain Charles Hammond, esquire, or one of them, from the death of the said Philip until* the month of June 1771," &c. which petition appears on the face of it to have been altered so as to read as follows: "That the said certificate was, *on the 4th of October* 1753, returned to the land office, that the said certificate was, *on the 13th of October 1763, withdrawn out of the land office by a certain John Hammond*, esquire,

1807.
Hammond
vs
Warfield

son of the said *Philip*, till the month of June 1771," &c. And the plaintiff offered to give in evidence, that the alteration made in the petition, by inserting the words and figures, "*on the 4th of October* 1753," and the words and figures, "*on the 13th of October* 1763, *withdrawn out of the land office,*" is in the handwriting of *St. George Peale;* and that *St. George Peale* departed this life some time in the year 1779.

CHASE, Ch. J. The court refuse to permit the plaintiff to give in evidence to the jury the petition preferred to the judges of the land office by *Thomas Dorsey,* and the alterations therein, in the hand-writing of *Saint George Peale,* as a circumstance to prove at what time the certificate for *Part of Wood's Inclosure* was returned into the land office, or to prove that it was returned into the office on or before the 5th of March 1754, the court being of opinion, that it is inadmissible for that purpose, as the defendant does not derive any interest in the land in question under *Thomas Dorsey,* by whom the petition was so preferred to the judges of the land office. The plaintiff excepted; and the verdict and judgment being against him, he prosecuted this appeal.

The cause was argued in this court at the last June term, before TILGHMAN, NICHOLSON, and GANTT, J. upon the several bills of exceptions taken at the trial by the plaintiff in the court below, being those herein numbered 3, 5, 6 and 7.

*Key,* and *Johnson* (Attorney General,) for the Appellant, on the *third* bill of exceptions, contended, that the relation of a patent to the certificate of survey depended alone upon those facts which appeared upon record; that a court of law could not travel out of the record and take into consideration that which did not appear of record; and that where relation had been refused at law, it was upon the ground of something appearing on record. They cited *Garretson's Lessee vs Cole,* 2 *Harr. & M'Hen.* 459. *Garretson vs Cole,* 1 *Harr. & Johns.* 370, *Morris vs Pugh,* 3 *Burr.* 1243. *Shep. Ab.* 151. That if the court could travel out of the record for proof that the certificate of survey was out of the land office, they could, with the

1807.

Hammond
vs
Warfield

same propriety, admit parol proof that the party, claiming under a junior survey, had notice of the prior one, although it was not in the office.

On the *fifth* bill of exceptions—That if the relation of a grant to the certificate of survey was objected to, it was incumbent on the party objecting, to show that the party claiming the relation, stood in such a situation that he was not entitled to it. They cited *Shelley's* case, 1 *Coke*, 99. *Swann vs Broome*, 3 *Burr*. 1596.

On the *sixth* bill of exceptions—That it was incumbent on the defendant to prove that the certificate of resurvey was out of the land office; and that unless he produced such proof, the jury were bound to presume that it was never out of the office after it had been first returned

On the *seventh* bill of exceptions—That the interlineations in the petition, having been made by a clerk in the land office, to whom the facts must have been known, was the best evidence the nature of the case was susceptible of, and should have been admitted in evidence.

*Shaaff* and *Harper*, for the Appellee, on the *third* and *fifth* bills of exceptions, contended, that there was no evidence given by the plaintiff below, that the certificate for *Part of Wood's Inclosure* was in the office before the patent was granted to *Dorsey*; and that there was negative evidence offered by the defendant. But that even if it was in the office at that time, the relation of the grant to the certificate ought not to be allowed, as *Howard* had violated the rules and regulations of the office, by obtaining a warrant to resurvey land in which he had no estate, and by including in his resurvey vacant land not contiguous to the original tract resurveyed. That the relation of a grant to the certificate was not a fixed and positive rule of law, but depended upon the nature of the right, and was never allowed unless it was to produce right. That the doctrine of relation was founded upon principles of equity, and it was the act of the law, and not of the parties, and was never allowed to divest a lawful vested estate, unless upon equitable principles. They cited *Howard's Lessee vs. Cromwell*, 1 *Harr. & Johns*. 115. *Peter's Lessee vs. Mains*, 4 *Harr. & M'Hen*. 423. *Ringgold's Lessee vs. Malott*, 1 *Harr. & Johns*. 299. *Beall's Lessee vs. Beall*, *Ibid* 346. *Shep. Ab*. (3d part,) 149, 150.

*Butler & Baker's* case, 3 *Coke*, 28. b.  3 *Blk. Com.* 48.
*Co. Litt.* 150. a.  *Land Hold. Ass.* 135, 187, 149, 151,
152, 153, 154.  They also contended, that the application
of the land warrant, in payment of the composition money
on *Dorsey's* resurvey, ought to be on the day it was assign-
ed to him.

1807.
Beall
vs.
Harwood

On the *sixth* bill of exceptions, that it was a matter of
fact for the jury to ascertain when a certificate of survey
was returned to the land office, as the time when it was re-
turned was not endorsed thereon by the register.  They
cited *Carroll et al. Lessee vs. Norwood*, 1 *Harr. & Johns.*
172.

On the *seventh* bill of exceptions, they contended, 1.
That the receipt of the composition money, as endorsed on
the certificate, was not evidence that the certificate was,
at the date of the receipt, or ever was, in the land office—
the receiver not being an officer of that office.  2. That
the alterations in the petition, by one of the clerks in
the office, was not an official act, and could not, there-
fore, affect the defendant, who did not claim under the
petitioner.                              *Curia adv. vult.*

THE COURT, at this term, concurred in the opinions
pronounced by the General Court in the several bills of
exceptions taken on the part of the plaintiff below.

                    JUDGMENT AFFIRMED.

---

BEALL, *et al.* Lessee *vs.* HARWOOD.

DECEMBER.

APPEAL from the General Court.  Ejectment for a tract
of land called *Buzzard Island*, lying in *Calvert* county.

In the construc-
tion of an act of
assembly, the in-
tention of the le-
gislature is to pre-
vail, and is to be collected from the whole of the law, and the circumstances which produced it

Where lands had been devised by A to his son B, intail male, remainder int.il ma.e to his eldest
son C, remainder intail male to his third son D, remainder in fee to his two daughters E and F, as
tenants in common—B by his petition to the legislature stated, that he had only *female heirs,* (vi?,
two daughters, L and M ) who could not inherit the lands after his death, whereby it would descend
to his eldest brother C, (who united in the petition;) he therefore prayed that an act might pass to vest
an estate of inheritance in fee simple in the said land, in his female heirs, in case he should have no
male heirs at the time of his dea h; and in default .f issue of his said female heirs, the said lands to
descend according to the will of his father  Which prayer being thought reasonable, the legislature
by an act, reciting the facts and the prayer set forth in the petition, vested the said lar ls in the said
female heirs of B, their heirs and assigns, with a proviso, that if B should have any male heis of his
body at the tim of his death, or that the said female heirs of B should not have issue, then the lands
should descend and stand limited as by the will of A was devised. Afterwards B had a son born nam-
ed G, who died in the life-time of B, leaving three daughters, H, J and K.  During the life of G, (in
1791,) the lands were conveyed to him in fee by B, of which he died seized, leaving the said three
daughters  B afterwards died, leaving issue his said two daughters L and M, who entered, &c. They
are both since dead, M having survived L, leaving a daughter N, married to the defendant  On an
ejectment brought in the name of the lessee of H, J and K, the three daughters of G—Held, that *fe-
male heirs* in the act of assembly, meant the two daughters of B, and that an estate in fee simple
vested in them, to be defeated and divested out of them on the happening of either of two contin-
gencies, 1st If B left issue male at the time of his death; and 2d If B should die without leaving is-
sue male at the time of his death, and his two daughters shou'd die without leaving issue; and that the
plaintiff was not entitled to recover

A mortgagor cannot support an ejectment for the land mortgaged, unless he can show that the
mortgage had been satisfied previous to the bringing the ejectment